UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Telephone Science Corporation,<br><br>    Plaintiff,<br><br>v.<br><br>Jack Pizzo, 2 Brothers Worldwide Publishing LLC, Voice Broadcasting Corporation, Jeff Fournier, Bump & Grind Inc., Blue House Inc., and Justin Grella,<br><br>    Defendants. | 2:15-cv-01702-LDW-AYS<br><br>**SECOND AMENDED COMPLAINT FOR DAMAGES UNDER THE TELEPHONE CONSUMER PROTECTION ACT**<br><br>**JURY DEMANDED ENDORSED HEREIN** |

## PARTIES

1. Plaintiff, Telephone Science Corporation ("Plaintiff" or "TSC"), is a Delaware corporation that maintained its principal place of business in Mount Sinai, New York, at all times relevant to this action.

2. Defendant, 2 Brothers Worldwide Publishing LLC ("2 Brothers"), is a Florida limited liability company that maintained its principal place of business in Farmingdale, New York, at all times relevant to this action.

3. Defendant, Jack Pizzo ("Pizzo"), is a citizen of New York.

4. Defendant, Voice Broadcasting Corporation ("Voice Broadcasting"), is a South Dakota corporation that maintained its principal place of business in Arlington, Texas, at all times relevant to this action.

5. Defendant, Jeff Fournier ("Fournier"), is a citizen of Texas.

6. Defendant, Bump & Grind Inc. ("Bump & Grind"), is a New York corporation that maintained its principal place of business in Manhasset, New York, at all times relevant to this action.

7. Defendant, Blue House Inc. ("Blue House"), is a New York corporation that maintained its principal place of business in Great Neck, NewYork, at all times relevant to this action.

8. Defendant, Justin Grella ("Grella"), operates New York business entities Bump & Grind and Blue House.

## JURISDICTION AND VENUE

9. Pursuant to 28 U.S.C. § 1331, this Court has federal question jurisdiction over this matter as it arises under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

10. Pursuant to 28 U.S.C. § 1391(b), venue is proper because a substantial part of the events giving rise to this claim occurred in this District.

11. Defendants are also subject to specific jurisdiction because a substantial part of the events giving rise to this claim occurred in this District such as:

    a. Defendants Voice Broadcasting, Fournier, Bump & Grind, Blue House, and Grella had direct contact with Defendants 2 Brothers and Pizzo, which are based in Farmingdale, New York, by providing 2 Brothers and Pizzo with over $100,000 in lead generation services relating to a telemarketing campaign that included calls made to Plaintiff;

    b. Defendants Voice Broadcasting, Fournier, Bump & Grind, Blue House, and Grella made telemarketing calls directed to area codes in this District and the telemarketing services were put into the stream of commerce such that the telemarketing services would reach this District;

c. Defendants 2 Brothers, Blue House, and Bump & Grind, are either New York business entities or have a principal place of business in this District;

d. Voice Broadcasting, Fournier, Bump & Grind, Blue House, and Grella purposefully availed themselves of the privilege of transacting business with New York corporations by voluntarily providing telemarketing services to persons in this District and entering into contracts with residents of this District, namely 2 Brothers and Pizzo;

e. Defendants knew that the subject telemarketing campaign was directed at persons in this District;

f. Defendants all transacted business in this District and that business was substantially related to the claims in this case;

g. Defendants all committed the intentional act of making telephone calls without the prior express consent of the called party in violation of the TCPA; and

h. Defendants' conduct was expressly aimed at this District by making calls to phone numbers with area codes in this District and VBC and Fournier caused calls to be transferred to Pizzo and 2 Brothers in New York as part of the robocall campaign.

*Telephone Science Corporation's Business*

12. TSC operates "Nomorobo," a service designed to help consumers avoid incoming computerized telephone calls that the Federal Trade Commission ("FTC") refers to as "robocalls."

13. The FTC defines a "robocall" as one in which the caller uses a recorded or automated voice. *See* "Consumer Information: Robocalls," http://www.consumer.ftc.gov/articles/0259-robocalls.

14. In 2013, Nomorobo was one of two winners of the FTC's first Robocall Challenge, a public contest to design a system to stop unsolicited telemarketing calls before the calls can ring through to the subscriber of the called telephone number. *See* "FTC Announces Robocall Challenge Winners," https://www.ftc.gov/news-events/press-releases/2013/04/ftc-announces-robocall-challenge-winners.

15. As of the date on which this complaint is being filed, the Nomorobo service has helped consumers to avoid over 40 million unwanted robocalls.

16. In order to provide the Nomorobo service to consumers, TSC maintains a "honeypot" group of telephone numbers, from which TSC is able to gather information related to inbound calls.

17. In order for TSC's robocall detection algorithm to accurately detect high frequency robocalling patterns, it compiles a large quantity of data related to calls placed to telephone numbers in the TSC "honeypot."

18. The TSC "honeypot" is comprised of thousands of telephone numbers to which TSC subscribes.

19. ***Only Defendants' calls to telephone numbers in the TSC "honeypot" are at issue in this case***.

### Defendants' Business

20. Defendants have used computerized calls to bombard phone numbers with solicitations to promote "Strathmore's Who's Who Worldwide" - a vanity publication.

21. Such vanity publications have been labeled "Who's Who scams" by various sources, including multiple State Attorney General offices.[1]

---

[1] See http://en.wikipedia.org/wiki/Who's_Who_scam; http://www.ct.gov/ag/cwp/view.asp?A=1772&Q=282418 (Connecticut Office of Attorney General); http://www.doj.state.or.us/releases/Pages/2012/rel061312.aspx (Oregon

22. Defendants have regularly made calls to promote "Strathmore's Who's Who Worldwide" using an artificial or prerecorded voice to call telephone numbers that are assigned to a service for which the called party is charged for the call.

23. E-mail communications between Grella and Fournier disclose that Grella, Fournier and VBC used an "auto-dialer" to make calls to telephone numbers subscribed to by Plaintiff on behalf of Pizzo and 2 Brothers to promote "Strathmore's Who's Who Worldwide".

24. An "auto-dialer" is an automated telephone dialing system (ATDS) as defined by the TCPA.

25. Defendants' telephone calls to promote "Strathmore's Who's Who Worldwide" were made for non-emergency purposes.

26. One of the pre-recorded voice messages that Defendants used in connection with their robocalls states, "This is Kimberly calling from Strathmore's Who's Who. You have been selected to represent your industry as one of our top 100 business professionals. If you're interested in having your biography featured in our next publication please press 1 and you will be connected to one of our executive directors. If you wish to be removed from our list then press 9."

27. Another pre-recorded voice message that Defendants used in connection with their robocalls states, "This is Maria calling from Strathmore's Who's Who. You have been selected to represent your industry as one of our top 100 business professionals. If you're interested in having your biography featured in our next publication please press 1 and you will be connected to one of our executive directors. If you wish to be removed from our list then press 9."

---

Department of Justice); http://www.illinoisattorneygeneral.gov/consumers/protectbus.html (Office of Illinois Attorney General).

28. Defendant Pizzo has direct personal participation in this marketing to promote "Strathmore's Who's Who Worldwide" for Defendant, 2 Brothers and used Grella as his exclusive agent.

29. As Managing Partner and Director of 2 Brothers, Pizzo is – by his own admission -- intrinsically involved in all aspects of the company, including human resources, management and training a staff of over forty sales professionals.[2]

30. As such, Pizzo has actively overseen and directed the calls to promote "Strathmore's Who's Who Worldwide" using an artificial or prerecorded voice by communicating with Grella and having access to the online campaign manager software utilized to make robocalls to Plaintiff.

31. As part of Pizzo's "intrinsic involvement" he was responsible for company policy and oversaw day-to-day operations that violated the TCPA.

32. Fournier and Grella also had direct personal participation in and personally authorized the conduct at issue in this case that violates the TCPA.

33. Fournier and Grella, like Pizzo, had access and control of the online campaign manager that loaded telephone numbers from sources that had not verified whether the called parties had consented to be called and then launched and dialed the robocalls.

34. Fournier, Pizzo and Grella had the authority and responsibility to prevent or correct the subject unlawful telemarketing practices, and formulated, directed, controlled and participated in the acts and practices that violated the TCPA, including the acts and practices at issue in this case.

35. Fournier, Pizzo and Grella directly and personally participated in, ratified, directed and/or authorized the conduct constituting the statutory violations alleged herein.

---

[2] See http://www.pr.com/press-release/584866

36. Fournier, Pizzo and Grella personally established, approved, and ratified policies and practices, oversaw operations and were directly involved in the business practices that violated the TCPA.

37. Numerous people have complained about telemarketing calls from Strathmore's Who's Who.

38. One Internet commenter complained, "Received a call was placed by or on behalf of Defendants from 844-251-4526 - Strathmore. Listened to message and pressed "9" to be removed from their call list. Approximately 10 minutes later, received a call was placed by or on behalf of Defendants from 844-251-4525 - also Strathmore. Guess that "Press 9" feature to be removed from their call list doesn't work very well."[3]

39. Fournier, Grella and Pizzo were all personally aware of similar complaints that robocalls continued to be made to persons who had not consented to receive robocalls from Defendants using the online robocall campaign manager.

40. Fournier, Grella and Pizzo failed to take efforts to implement appropriate policies or procedures designed to comply with the TCPA.

## DEFENDANTS' CALLS TO TSC

41. On or around October 27, 2014, Defendants began calling telephone numbers to which TSC was the subscriber (the "TSC Numbers").

42. The TSC Numbers are identified in Exhibit A and are part of the TSC "honeypot."

43. TSC was the subscriber to each TSC Number Defendants called at the time of the call.

44. TSC continues to subscribe to each TSC Number.

45. Prior to the time when Defendants began calling the TSC Numbers, TSC had not provided express consent to any Defendant to call any TSC Number.

---

[3] See http://800notes.com/Phone.aspx/1-844-251-4526

46. At no time after Defendants began calling the TSC Numbers has TSC provided express consent to any Defendant to call any TSC Number.

47. Each TSC Number is assigned to a voice over Internet protocol ("VoIP") telephone service for which TSC is charged for the call.

48. The VoIP telephone service to which the TSC numbers are assigned assesses a per-minute charge to TSC for each incoming call it receives.

49. Each TSC Number consists of a ten (10) digit number, which a caller may reach by dialing the TSC Number in the same manner as the caller dials any other telephone number.

50. Each TSC Number is reached through the Public Switched Telephone Network.

51. There is no distinguishing feature or characteristic of a TSC Number to make it more desirable or attractive to call than any other telephone number.

52. TSC does not solicit or otherwise entice callers to call any TSC Number.

53. TSC has never called any Defendant from any TSC Number.

54. On each occasion that Defendants placed a telephone call to a TSC Number, Defendants did so voluntarily.

55. VBC and Fournier, at the direction of Grella, the agent for Pizzo and 2 Brothers, used an autodialer that made calls that used a pre-recorded voice message to Plaintiff in order to promote "Strathmore's Who's Who".

56. As explained on the website of VBC:

    We make it easy for you to be successful.  Our team will help create a powerfully persuasive set of recorded phone messages, and then we will call a targeted list of your prospects and play your message to them.  The interested ones press 1 to talk to you.

    We will furnish a phone list to dial to, for free.  We have a list database with hundreds of millions of records, which we will search through to find the people most likely to be interested in talking to you.

    *See* http://voicebroadcasting.com, "How" webpage.

57. As of the date on which this complaint is being filed, Defendants placed approximately 1079 telephone calls to the TSC Numbers using an ATDS and/or an artificial or pre-recorded voice according to telephone call records provided by Fournier and VBC.

58. Bump & Grind, Blue House, Grella, 2 Brothers, Pizzo, Voice Broadcasting, and Fournier had access to an online campaign manager to manage and make calls for the subject robocalling campaign.

59. Bump & Grind, Blue House, Grella, 2 Brothers, Pizzo, Voice Broadcasting, and Fournier acted in concert to assure that telephone numbers from persons who had not consented to be called by Defendants were loaded into the online campaign manager and that robocalls were then made utilizing the online campaign manager.

60. Bump & Grind, Blue House, and Grella worked with 2 Brothers and Pizzo in making illegal calls to induce the purchase of goods or services related to the Strathmore's Who's Who publication by using the robocalling services of Fournier and Voice Broadcasting.

61. Grella and Fournier worked together to implement the artificial and pre-recorded voice calling campaign at the direction of Pizzo, who provided instructions to Grella by phone.

62. For example, Pizzo monitored the campaign, including monitoring sales and conversion rates for the robocall campaign, and regularly communicated with Grella about these facts.

63. Grella and Fournier were in regular communication using e-mail to manage and direct the illicit robocall campaign.

64. Defendants, Voice Broadcasting, Fournier, Bump & Grind, Blue House, Grella, 2 Brothers and Pizzo, all are directly liable for initiating calls to Plaintiff due to their access to the online campaign manager which powered the robocall campaign.

65. For example, on or around February 20, 2015, Fournier told Grella that he would add undialed leads into the campaign manager and told Grella, "[P]lease don't start dialing on that campaign until it has finished processing."

66. Defendants, Voice Broadcasting, Fournier, Bump & Grind, Blue House, and Grella placed telemarketing calls on behalf of and with full knowledge of 2 Brothers and Pizzo, which permitted Voice Broadcasting, Fournier, Bump & Grind, Blue House, and Grella to use 2 Brothers' trade name, and gave the these Defendants direct access to 2 Brothers' telephone system using the system employed to make ATDS and/or artificial or pre-recorded voice calls.

67. Pizzo and 2 Brothers entered into an agreement with Voice Broadcasting and Fournier through Grella that enables them to hold themselves out as "Strathmore's Who's Who".

68. Defendants, Voice Broadcasting, Fournier, Bump & Grind, Blue House and Grella used artificial voice messages that mentioned Strathmore's Who's Who.

69. Pizzo and 2 Brothers contracted with Defendants, Voice Broadcasting and Fournier through Grella, to make calls using artificial voice scripts directing people to connect with Strathmore's Who's Who.

70. For example, Grella provided new Strathmore messages for Fournier to re-record for the artificial and pre-recorded voice calls in February of 2015.

71. Justin Grella obtained phone numbers from sources such as ZoomInfo, Data.com, Netprospex, Manta, and InfoUS – sources that did not contain phone numbers of businesses and indviduals who had provided prior express consent to be called by Defendants.

72. Justin Grella did not obtain phone numbers from persons who provided prior express written consent to receive pre-recorded or artificial voice calls on behalf of Pizzo and 2 Brothers.

73. Pizzo and 2 Brothers reasonably should have known that Voice Broadcasting, Fournier, Bump & Grind, Blue House, and Grella were violating the TCPA because Defendants did not have express consent to call the people whose telephone numbers were loaded into the online campaign manager.

74. For example, by at least February 12, 2014, Pizzo and 2 Brothers were aware that people who had pressed 9 to be removed from the call list were continuing to get calls because people that pressed 1 to be connected with a telephone representative for Pizzo and 2 Brothers and complained that they were still getting calls.

75. Defendants were aware that the subject robocall campaign violated the TCPA before it made hundreds of calls to Plaintiff.

**APPLICABLE LAW**

76. Senator Fritz Hollings, the original sponsor of the TCPA, stated:

> Computerized calls are the scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone right out of the wall.

137 Cong. Rec. 30,821 (1991).

77. In a letter from the National Association of Attorneys General to executives at five (5) of the country's largest telephone service provides, forty-five (45) State Attorneys General stated:

> As state Attorneys General, we are on the front lines of consumer protection for millions of Americans harassed by unwanted and unwelcome robocalls. Though our offices work

diligently to prosecute those who violate state and federal laws intended to prevent such calls, our enforcement efforts alone cannot stop the problem. The better solution is to stop intrusive calls before they ever reach the consumer.

See July 22, 2015 Letter attached hereto as "Exhibit B."

78. The TCPA provides a private right of action that enables a person or entity to "tak[e] on the role of a private attorney general" in enforcing the provisions of the Act. *See Lary v. Trinity Phys. Fin. & Ins. Servs.*, 780 F.3d 1101, 1105 (11th Cir. 2015); *citing Charvat v. Echostar Satellite, LLC*, 630 F.3d 459, 461 (6th Cir. 2010).

79. The TCPA defines an automatic telephone dialing system ("ATDS") as "equipment which has the capacity…(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

80. The TCPA provides, in part:

> (b) RESTRICTIONS ON THE USE OF AUTOMATED TELEPHONE EQUIPMENT.—
>
>> (1) PROHIBITIONS.—It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—
>>
>>> (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice—
>>>
>>> * * *
>>>
>>> (iii) to ***any telephone number*** assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or ***any service for which the called party is charged for the call***…

47 U.S.C. §§ 227(b)(1)(A)(iii) (emphases added).

81. The prohibition in Section 227(b)(1)(A)(3) applies to telephone calls placed to any telephone number that meets the criteria stated in that subsection, regardless of whether the telephone

number is used for business or personal purposes. *See Warnick v. Dish Network LLC*, 2014 U.S. Dist. LEXIS 138381, *31-36 (D. Colo. Sep. 30, 2014).

82. The VoIP telephone service to which the TSC numbers are assigned is a "service for which the called party is charged for the call" within the meaning of the TCPA. *See Lynn v. Monarch Recovery Mgmt., Inc.*, 586 Fed. Appx. 103 (4th Cir. 2014); *affirming Lynn v. Monarch Recovery Mgmt., Inc.*, Dkt. 1:11-cv-02824-WDQ (D. Md. Mar. 25, 2013) (VoIP service for which plaintiff was charged $0.0149 per minute for each of defendant's incoming calls "fits squarely within the separate prohibition of the [TCPA's] call charged provision.").

83. TSC incurred out-of-pocket expenses in the form of per-minute charges as a direct and proximate result of the calls Defendants placed to the TSC Numbers.

84. TSC's out-of-pocket expenses satisfy the injury-in-fact and causation requirements of Article III of the United States Constitution. *See Doe v. Chao*, 540 U.S. 614, 627 n.12, 124 S. Ct. 1204, 1212 n.12 (2004) ("out-of-pocket expenses…suffice to qualify under any view of actual damages.").

85. The term "called party," as used in Section 227(b)(1)(A) of the TCPA, refers to the person or entity subscribing to the called number at the time the telephone call is made. *See Zyboro v. NCSPlus, Inc.*, 44 F. Supp. 3d 500, 504 (S.D.N.Y. 2014); *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Declaratory Ruling and Order, adopted June 18, 2015, pp 40-41, ¶ 73.

86. TSC was the "called party" in each telephone call Defendant placed to a TSC Number. *See Telephone Science Corp. v. Trading Advantage, LLC*, 2015 U.S. Dist. LEXIS 18591, *3 (N.D. Ill. Feb. 17, 2015) (based on unambiguous language in TCPA, "TSC's allegations fall within the statutory prohibition of § 227(b)(1)(A)(iii)").

## COUNT ONE

### Violation of the Telephone Consumer Protection Act

87. Plaintiff re-alleges and incorporates by reference Paragraphs 12 through 86 above as if fully set forth herein.

88. The TCPA provides the following private right of action to individuals and entities:

> PRIVATE RIGHT OF ACTION. – A person *or entity* may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State –
>
> (A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,
>
> (B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, *whichever is greater*, or
>
> (C) both such actions.

47 U.S.C. § 227(b)(3) (emphases added).

89. The damages recoverable under the TCPA are designed to make the practice of violating the Act "prohibitively expensive, which is an acceptable means of accomplishing the statute's goal of deterrence." *Phillips Randolph Enterprises, LLC v. Rice Fields*, 2007 U.S. Dist. LEXIS 3027, *7 (N.D. Ill. Jan. 11, 2007).

90. Defendants violated 47 U.S.C. § 227(b)(1)(A) on multiple and separate occasions by using an ATDS and/or an artificial or prerecorded voice to call TSC at a telephone number assigned to a service for which TSC is charged for the call without TSC's prior express consent.

## COUNT TWO

### Willful and Knowing Violation of the Telephone Consumer Protection Act

91. Plaintiff re-alleges and incorporates by reference Paragraphs 12 through 86, above as if fully set forth herein.

92. The TCPA provides, in part:

    > If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph.

    47 U.S.C. § 227(b)(3).

93. The Communications Act of 1943, of which the TCPA is a part, defines "willful" as "the conscious or deliberate commission or omission of such act, irrespective of any intent to violate any provision[], rule or regulation…." 47 U.S.C. § 312(f).

94. In order to establish a "willful" or "knowing" violation of the TCPA, a plaintiff need not demonstrate that the defendant intended to violate the statute, or that it knew or should have known it was violating the statute. *See Roylance v. ALG Real Est. Servs., Inc.* 2015 U.S. Dist. LEXIS 44930, *31 (N.D. Cal. Mar. 16, 2015) *Bridgeview Health Care Ctr. Ltd. v. Clark*, 2013 U.S. Dist. LEXIS 37310, *21-22 (N.D. Ill. Mar. 19, 2013); *Steward v. Regent Asset Mgmt. Solutions, Inc.*, 2011 U.S. Dist. LEXIS 50046, *18-20 (N.D. Ga. 2011).

95. Instead, a plaintiff need only show that the defendant engaged in a "voluntary act" that violated the TCPA. *See Bridgeview*, 2013 U.S. Dist. LEXIS, at *21-22; *see also Roylance*, 2015 U.S. Dist. LEXIS, at *31 (intentionally making phone calls that violated TCPA, without intent to violate the statute, was sufficient to warrant treble damages).

96. Defendants voluntarily placed telephone calls to the TSC Numbers using an ATDS and/or an artificial or prerecorded voice.

97. In addition, a company that places telephone calls using an ATDS and/or an artificial or prerecorded voice bears a responsibility to place intermittent live verification calls to ensure the subscriber being called has provided his or her express consent to be called. *See Olney v. Progressive Cas. Ins. Co.*, 993 F. Supp. 2d 1220, 1224 (S.D. Cal. 2014)*; Sterling*, 2013 U.S.

Dist. LEXIS 186432, at *8; *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 1316, 1322 (S.D. Fla 2012).

98. Defendant willfully and knowingly violated 47 U.S.C. § 227(b)(1)(A) on multiple and separate occasions by using an ATDS and/or an artificial or prerecorded voice to call TSC at a telephone number assigned to a service for which TSC is charged for the call without TSC's prior express consent.

## JURY DEMAND

99. TSC demands a trial by jury.

## PRAYER FOR RELIEF

100. TSC prays for the following relief:

    a. An order enjoining Defendants from placing further telephone calls to the TSC Numbers pursuant to 47 U.S.C. § 227(b)(3).

    b. Judgment against Defendants for damages pursuant to 47 U.S.C. § 227(b)(3) for each and every call Defendant made in violation of the TCPA.

    c. For such other legal and/or equitable relief as the Court deems appropriate.

**[SIGNATURE ON FOLLOWING PAGE]**

                RESPECTFULLY SUBMITTED,

                Hyslip & Taylor, LLC LPA


                By: /s/ Mark T. Lavery
                One of Plaintiff's Attorneys

*Pro Hac Vice* Counsel
Mark T. Lavery
1100 W. Cermak Rd., Suite B410
Chicago, IL 60608
Telephone: (312) 380-6110
Facsimile: (312) 361-3509
Email: mark@lifetimedebtsolutions.com

*Local Counsel*
Christopher P. McDonnell, Esq.
146-26 35 Avenue
Flushing , NY 11354
Telephone: (917) 741-1388
Email: Christopher.Mcdonnell@csi.Cuny.Edu

**CERTIFICATE OF SERVICE**

I, the undersigned attorney, certify that on October 1, 2015, I electronically filed the foregoing Plaintiff's Second Amended Complaint through the court's CM/ECF system, which will perfect service on the following counsel of record:

Steven G. Legum
170 Old Country Road
Mineola , NY  11501
516-873-9300
Sgl@legum.Biz

In addition, I will undertake to effect service of process upon the newly added Defendants in accordance with Rule 4 of the Federal Rules of Civil Procedure.

/s/ Mark T. Lavery