## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| TELEPHONE SCIENCE CORPORATION,<br><br>       Plaintiff,<br><br>    v.<br><br>JACK PIZZO, 2 BROTHERS WORLDWIDE PUBLISHING LLC, VOICE BROADCASTING CORPORATION, JEFF FOURNIER, BUMP & GRIND INC., BLUE HOUSE, INC., AND JUSTIN GRELLA,<br><br>       Defendants. | CIVIL ACTION: 2:15-CV-01702<br><br>ORAL ARGUMENT REQUESTED |

## AMENDED MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS VOICE BROADCASTING CORPORATION AND JEFF FOURNIER'S AMENDED MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

Gregory T. Parks (admitted pro hac vice)
Ezra D. Church (admitted pro hac vice)
MORGAN LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, Pennsylvania 19103
Tel: (215) 963-5000
Fax: (215) 963-5001

- and -

Stephanie Gamiz
MORGAN LEWIS & BOCKIUS LLP
101 Park Avenue
New York, New York 10178-0600
Tel:  (212) 309-6000
Fax:  (212) 309-6001

*Attorneys for Voice Broadcasting Corporation and Jeff Fournier*

**TABLE OF CONTENTS**

Page

I.   FACTUAL BACKGROUND ................................................................................................ 1
II.  ARGUMENT ...................................................................................................................... 3
     A.   Legal Standard for Motion to Dismiss Under Rule 12(b)(6) ................................. 3
     B.   The SAC Does Not Allege that VBC or Fournier Made the Calls at Issue ........... 4
     C.   Telephone Science Fails to Plausibly State a Claim Against Jeff Fournier
          Personally ................................................................................................................ 9
III. CONCLUSION ................................................................................................................. 11

## **TABLE OF AUTHORITIES**

**CASES**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...........................................................................................................3, 7

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ..............................................................................................................3

*Brass v. Am. Film Techs., Inc.*,
    987 F.2d 142 (2d Cir. 1993) .................................................................................................3

*Covington & Burling v. Int'l Mktg. & Research, Inc.*,
    No. CIV.A. 01-0004360, 2003 WL 21384825 (D.C. Super. Ct. Apr. 17, 2003) ....................11

*Cunningham v. Kondaur Capital*,
    No. 3:14-1574, 2014 WL 8335868 (M.D. Tenn. Nov. 19, 2014) ............................................10

*Dobkin v. Enter. Fin. Group, Inc.*,
    No. 2:14-cv-10989, 2014 EL 4354070, at *3 (D.N.J. Sept. 3, 2014) ...............................5, 6, 8

*Flores v. Mamma Lombardis of Holbrook, Inc.*,
    942 F. Supp. 2d 274 (E.D.N.Y. 2013) (Wexler, J.) ..................................................................3

*Huricks v. Shopkick, Inc.*,
    No. C-14-2464, 2015 WL 5013299 (N.D. Cal. Aug. 24, 2015) ...................................4, 5, 6, 8

*Jackson Five Star Catering, Inc. v. Beason*,
    No. 10-10010, 2013 WL 5966340 (E.D. Mich. Nov. 8, 2013) .............................................10

*Kauffman v. CallFire, Inc.*,
    --- F. Supp. 3d ---, 2015 WL 6605459 (S.D. Cal. Oct. 8, 2015) ................................................5

*Lucas v. Telemarketer Calling From (407) 476-5670 & Other Tel.*
    *Numbers*, No. 1:12-CV-630, 2014 WL 1119594 (S.D. Ohio Mar. 20, 2014) ........................10

*Marketplace LaGuardia Ltd. P'ship v. Harkey Enters., Inc.*,
    No. 07-CV-1003, 2008 WL 905188 (E.D.N.Y. Mar. 31, 2008) ..............................................7

*Ott v. Mtg. Inv'rs Corp. of Ohio*,
    65 F. Supp. 3d 1046, 1061 (D. Or. 2014) ..............................................................................10

*Shostack v. Diller*,
    No. 15-cv-2255, 2015 WL 5535808 (S.D.N.Y. Sept. 16, 2015) .......................................9, 11

*Smith v. Securus Techs., Inc.*,
    No. 15-cv-550, 2015 WL 4636696 (D. Minn. Aug. 4, 2015) ..................................................4

## TABLE OF AUTHORITIES
(continued)

**Page**

*Van Sweden Jewelers, Inc. v. 101 VT, Inc.*,
　No. 1:10-CV-253, 2012 WL 4074620 (W.D. Mich. June 21, 2012) .................................10, 11

*Versteeg v. Bennett, Deloney & Noyes, P.C.*,
　775 F. Supp. 2d 1316 (D. Wyo. 2011) ..................................................................................11

**STATUTES**

47 U.S.C. § 227 ................................................................................................................... passim

**OTHER AUTHORITIES**

47 C.F.R. § 64.1200(a)(1) ..................................................................................................................4

*Dish Declaratory Ruling*, 28 FCC Rcd 6574, 6583 (2013) ................................................................4

Federal Rule of Civil Procedure 12(b)(6) ........................................................................................3

*In re Rules & Regs. Implementing the Tel. Consumer Protection Act of 1991*,
　30 FCC Rcd. 7961 (July 10, 2015) ......................................................................6, 7, 8

Plaintiff Telephone Science Corporation ("Telephone Science") filed this action against Voice Broadcasting Corporation ("VBC") and Jeff Fournier ("Fournier")—VBC's Chief Executive Officer—as well as five other defendants, alleging violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), for telephone calls allegedly made to Telephone Science-owned phone numbers. The Second Amended Complaint ("SAC") incorrectly rests on the broad assumption that all seven defendants can be considered the "caller" under applicable law. But actual allegations in the SAC do not support that theory and in fact, show that VBC and Fournier played at most a minor role by providing software to individuals who conducted the allegedly unlawful telemarketing campaign. VBC and Fournier did not make any calls to Telephone Science; nor did they even select the numbers called. Telephone Science's claims, therefore, must be dismissed because (1) the TCPA only creates liability for a "caller"; (2) VBC is not a "caller" under the TCPA because even according to the allegations of the SAC and documents referenced therein, VBC merely had access to the software used to make the calls; and (3) Fournier is not a caller for the same reasons, plus there are insufficient allegations to hold him personally liable for the acts of VBC.[1]

## I. FACTUAL BACKGROUND

Plaintiff Telephone Science operates "Nomorobo," a computerized service that attempts to catch "robocalls," presumably for purposes of bringing lawsuits like this. SAC ¶ 12. Nomorobo uses a "robocall detection algorithm" to analyze calling data. *Id.* ¶ 17. It maintains a "honeypot" group of thousands of telephone numbers and uses these trap numbers to "gather

---

[1] Co-Defendants 2 Brothers Worldwide Publishing LLC ("2 Brothers") and Jack Pizzo filed a third party complaint against VBC and Fournier asserting a cross-claim for indemnity. (Dkt. No. 44) Because there is no basis to hold VBC and Fournier liable under the TCPA, the cross-claim for indemnity should also be dismissed.

information related to inbound calls." *Id.* ¶¶ 16, 18. Telephone Science, and not any individual person, is the subscriber to each of these phone numbers. *Id.* ¶ 43.

The SAC identifies seven different defendants who allegedly "called" Telephone Science's honeypot phone numbers to promote "Strathmore Who's Who Worldwide":

- Defendant VBC provides telemarketing services (*id.* ¶ 11(d)) by offering a "Campaign Manager" software that users can access and control online (*id.* ¶ 33) for the managing and making of telephone calls (*id.* ¶ 58).

- Defendant Jeff Fournier is VBC's Chief Executive Officer.

- Defendant Justin Grella is an individual who operates Defendant Bump & Grind Inc. and Defendant Blue House, Inc. *Id.* ¶¶ 6-8.

- Defendant Jack Pizzo is Managing Partner and Director of Defendant 2 Brothers Worldwide. *Id.* ¶ 29.

- Defendant 2 Brothers Worldwide offers a vanity publication called "Strathmore's Who's Who Worldwide" which contains biographies of business professionals in certain industries. *Id.* ¶¶ 26, 27.

Pizzo and 2 Brothers, acting through Grella, entered into an agreement with VBC to allow telephone calls to be made on behalf of Strathmore's Who's Who. *Id.* ¶¶ 67, 69. Grella acted as 2 Brothers and Pizzo's "exclusive agent." *Id.* ¶ 28. The SAC alleges that Pizzo "has actively overseen and directed the calls to promote 'Strathmore's Who's Who Worldwide' using an artificial or prerecorded voice by communicating with Grella and having access to the online campaign manager software utilized to make robocalls to Plaintiff." *Id.* ¶ 30. Plaintiff claims that phone calls were made "**at the direction of Grella**, the agent for Pizzo and 2 Brothers" using "an autodialer that made calls that used a pre-recorded voice message to Plaintiff in order to promote 'Strathmore's Who's Who.'" *Id.* ¶ 55 (emphasis added). While the SAC makes conclusory allegations that up to seven different parties "made" the phone calls, penetrating to the actual factual allegations shows that VBC's role was providing and having access to the "campaign manager" software that was used to make the phone calls. Plaintiff contends that

VBC and Fournier are liable under the TCPA because they (1) had access to Campaign Manager (*id.* ¶ 58); (2) "acted in concert" with the other defendants (*id.* ¶ 59); and (3) "worked together to implement" the calling campaign "at the direction of Pizzo, who provided instructions to Grella" (*id.* ¶ 61).

## II.     ARGUMENT

### A.     Legal Standard for Motion to Dismiss Under Rule 12(b)(6)

On a motion to dismiss a complaint under Rule 12(b)(6), a court must assess whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is **plausible** on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (emphasis added). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Indeed, a claim is only facially plausible when its actual content allows the court to draw a reasonable inference that the defendants are liable for the misconduct alleged. *See id.* "Factual allegations must be enough to raise a right to relief above the speculative level" and the complaint must state "enough facts to raise a reasonable expectation that discovery will reveal evidence" of the necessary elements. *Twombly*, 550 U.S. at 555-56.

When deciding a Rule 12(b)(6) motion, a court may consider "(1) the factual allegations in the complaint; (2) documents attached to the complaint as exhibits or incorporated in it by reference; (3) matters of which judicial notice may be taken; and (4) documents that are integral to the complaint." *Flores v. Mamma Lombardis of Holbrook, Inc.*, 942 F. Supp. 2d 274, 277 (E.D.N.Y. 2013) (Wexler, J.) (citations omitted); *see also Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993). The Court may, therefore, consider the email communications between Fournier and Grella that Telephone Science incorporated by reference in the SAC (¶¶ 63, 65, 70) and relied on in bringing this suit against VBC and Fournier.

-3-

### B. The SAC Does Not Allege that VBC or Fournier Made the Calls at Issue

To be liable under the TCPA, a person or entity must "make" or "initiate" a telephone call.  *See* 47 U.S.C. § 227(b)(1)(A)(iii) ("It shall be unlawful for any person . . . to **make** any call [without] the prior express consent of the called party [] using any automatic telephone dialing system or an artificial or prerecorded voice to any telephone number assigned to a . . . cellular telephone service . . . or any service for which the called party is charged for the call.") (emphasis added); *see also* 47 C.F.R. § 64.1200(a)(1) (prohibiting a "person or entity" from "**initiat[ing]**" such calls).  Interpreting the language of the statute and regulations, the Federal Communications Commission ("FCC") has explained that a person or entity "initiates" a telephone call when "it takes the steps necessary to physically place a telephone call, and generally **does not include persons or entities, such as third-party retailers, that might merely have some role, however minor, in the causal chain that results in the making of a telephone call.**" *Dish Declaratory Ruling*, 28 FCC Rcd 6574, 6583 (2013) (emphasis added).

Accordingly, courts have consistently held that, in order to state a claim under the TCPA, the defendant "must have affirmatively caused the call to exist by selecting and dialing the recipients' telephone numbers." *Smith v. Securus Techs., Inc.*, No. 15-cv-550, 2015 WL 4636696, at *4 (D. Minn. Aug. 4, 2015) [2]  Claims against defendants who are merely a service provider or vendor are routinely dismissed.  *See, e.g.*, *id.* (holding that service provider did not "initiate" calls because the inmates selected and dialed the phone numbers); *Huricks v. Shopkick,*

---

[2]  This decision is not distinguishable merely because some of the phone calls at issue were collect calls.  In fact, the court noted that "not all of the phone calls made by the inmate were collect calls" and its holding did not distinguish between collect and non-collect calls.  *Id.* at *5.  The court cited a July 10, 2015 FCC Order discussing collect calling services to determine that the calls at issue were "single end-to-end communications." *Id.*  The essential take-away from *Smith* is that even though the defendant service provider inserted a pre-recorded voice message into the call, it was not the "maker" of the calls because it did not select and dial the telephone numbers.  *Id.*

*Inc.*, No. C-14-2464, 2015 WL 5013299 (N.D. Cal. Aug. 24, 2015) (holding that operator of a shopping app did not "initiate" messages because its users were required to make "affirmative choices" in determining whether, to whom, and when to send messages); *Dobkin v. Enter. Fin. Group, Inc.*, No. 2:14-cv-10989, 2014 EL 4354070, at *3 (D.N.J. Sept. 3, 2014) (granting motion to dismiss because "Plaintiff never alleges that EFG was involved in placing any particular phone call. Given the FCC's emphasis that one 'initiates' a phone call by physically placing it . . . . Plaintiff's allegations that EFG oversaw and advised Precise's telemarketing do not suffice to bring EFG's actions within the ambit of direct liability.").

Moreover, even if the SAC is read to allege that the agreement between the defendants in this action (SAC ¶¶ 67, 69) was a lease, the mere fact that a party offers or leases equipment for customers to make calls does not give rise to TCPA liability where the customers make affirmative choices and direct how that equipment is used. For example, the court in *Kauffman v. CallFire, Inc.*, --- F. Supp. 3d ---, 2015 WL 6605459 (S.D. Cal. Oct. 8, 2015), addressed allegations like those asserted by Telephone Science here. There, the plaintiff alleged that defendant The Sports Network hired or retained defendant CallFire to send text messages to his mobile phone using an automatic telephone dialing service. *Id.* at *1. Both VBC and CallFire provide a similar service to customers—they both offer an internet-based platform through which customers can make phone calls (VBC) or send text messages (CallFire) to a list of phone numbers provided by the customer. *Id.* In *Kauffman,* the plaintiff sought to hold CallFire liable under the TCPA as a "caller" merely because it was the "internet-based transmitter" of the text messages. *Id.* at *3. The court rejected this argument and granted summary judgment because CallFire's degree of involvement in deciding whether, when and to whom its customers would send messages was minimal. *Id.* at *4 (CallFire users "creat[ed] their own telephone number

-5-

contact lists," "select[ed] when to initiate the message," and "draft[ed] the content of the messages."). Accordingly, like CallFire, VBC is not liable under the TCPA merely because it provided software to a third party who then directed how that equipment was used.

Consistent with this standard, the FCC has used a totality of the circumstances test to determine "who makes a call under the TCPA and is thus liable for any TCPA violations." *In re Rules & Regs. Implementing the Tel. Consumer Protection Act of 1991*, 30 FCC Rcd. 7961, at ¶ 25 (July 10, 2015) (hereinafter "FCC Order").[3] The FCC considers: "1) who took the necessary steps to physically place the call; and 2) whether another person or entity was so involved in the placing of the call as to be deemed to have initiated it, considering the goals and purposes of the TCPA." *Id.* ¶ 30. All of the factors of this test focus on who physically initiated the call. Applying this test, the FCC found—consistent with Court decisions interpreting the TCPA— that a provider of a service platform or application does not "initiate" or "make" a call pursuant to the TCPA when it "exercises no discernible involvement in deciding whether, when or to whom" a call is made or the content of such call, but instead "merely has some role, however minor, in the causal chain that results in the making of a telephone call." *Id.* ¶¶ 32, 33.

The SAC does not plausibly allege that VBC or Fournier initiated or made any phone calls consistent with the applicable FCC and court decisions. There are no allegations that they

---

[3] "As 'Congress has delegated the FCC with the authority to make rules and regulations to implement the TCPA,' courts defer to the FCC's interpretation of a term in the TCPA, so long as the term is 'not defined by the TCPA' and the FCC's interpretation is 'reasonable.'" *See Huricks*, 2015 WL 5013299, at *2 (quoting *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009)). The FCC Order states that the TCPA does not define "make" (FCC Order ¶ 29) and courts have found the FCC's interpretation of "make" to be reasonable. *See, e.g., Huricks*, 2015 WL 5013299, at *2; *Dobkin*, 2014 WL 4354070, at *3 ("The FCC's interpretation of its regulations implementing the TCPA merits substantial deference.") (citing *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994) (reviewing courts "must give substantial deference to an agency's interpretation of its own regulations")).

physically placed the calls, including by selecting and dialing the recipients' telephone numbers. Instead, Telephone Science attempts to suggest their involvement by citing an email purporting to say that Fournier "add[ed] undialed leads into the campaign manager." *Id.* ¶ 65. The full email, attached hereto, makes it clear that the SAC takes this statement out of context and omits the fact that ***Grella*** selected those undialed leads with Fournier merely providing operational assistance with Campaign Manager. *See* February 19, 2015 E-mail from Grella to Fournier, (attached as Ex. 1 to the Declaration of Ezra D. Church (hereinafter "Church Decl.")) (instructing which numbers should be added to the campaign to be called).

Moreover, Telephone Science inconsistently alleges that "Defendants" made the calls. *See, e.g.*, SAC ¶ 41 ("*Defendants* began calling telephone numbers to which TSC was the subscriber") (emphasis added); *see also* ¶ 57. But such allegations are not sufficient to state a claim against VBC and Fournier as Telephone Science has sued **seven** different defendants and its vague, generalized allegations that "Defendants" made the phone calls at issue fail to plausibly state a claim under the TCPA and is the type of bare legal conclusion rejected by *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).[4]

The only specific allegations regarding the roles of Fournier and VBC indicate that they "oversaw operations" of their software, "used an autodialer that made calls," and "had access to an online campaign manager." *See, e.g.*, SAC ¶¶ 36, 55 & 58. But these allegations fail under the FCC's totality of the circumstances test, which require specific allegations of involvement in

---

[4] To the extent that Telephone Science intended to allege that more than one defendant actually placed the calls at issue or lacks information about who made the call, it needed to make reasonably clear that it was pleading in the alternative and it has not done so. *See Marketplace LaGuardia Ltd. P'ship v. Harkey Enters., Inc.*, No. 07-CV-1003, 2008 WL 905188, at *7 (E.D.N.Y. Mar. 31, 2008) ("While the [plaintiffs] need not use particular words to plead in the alternative, they must use a formulation from which it can be reasonably inferred that this is what they were doing.") (citations omitted).

"deciding whether, when or to whom" the calls should be made. *See* FCC Order ¶ 32; *see also Dobkin*, 2014 WL 4354070, at *3 (allegations that defendant was "heavily involved with Precise Enterprises's sales practices and marketing procedures and assisted Precise with various types of consulting and training" alone are insufficient to state a TCPA claim). Allegations regarding VBC and Fournier's provision of the software and advice and assistance regarding its operation are insufficient. *See Huricks*, 2015 WL 5013299, at *3 (merely providing an application for users to send messages is insufficient where users make "affirmative choices" in sending messages); *Dobkin*, 2014 WL 4354070, at *3 (company overseeing and advising on a telemarketing campaign was not liable). To the extent there is any doubt about the role of VBC and Fournier, the allegations of the SAC makes clear that VBC (and Fournier as its principal) merely had access to the online software that conducted the telemarketing campaign. *See, e.g.,* SAC ¶ 64.

Moreover, the functions of the Campaign Manager application confirm that it is the lessee or user of the software (and not VBC) that decides whether, when and to whom calls are made. As an initial matter, the user must log-in to the application with his or her specific credentials. *See* October 24, 2014 E-mail from Kimberly Roberts (VBC) to Grella (providing Grella with log-in credentials for the Strathmore account) (attached as Ex. 2 to Church Decl.). Once logged-in, the application has a dashboard for "building, controlling and monitoring your dialing campaigns, you can watch your campaigns as it dials from this report. You can also go into the Libraries for instructions on how to record a message and upload a list of phone numbers to dial." *See id.*

Email communications between Fournier and Grella, which Telephone Science incorporates by reference in the SAC, show that Grella, as agent for 2 Brothers and Pizzo, was

the one who decided whether, when, and to whom calls are made, as well as scripted the content of the automated message and dialed the phone numbers. For example:

- Grella provided Fournier with a script of the Strathmore messages for VBC to record. *See* February 5-6, 2015 E-mails between Grella and Founier (attached as Ex. 3 to Church Decl.) ("I will send copies on Microsoft Word of the Strathmore messages for you to re-record with Amber."); *see also* SAC ¶ 70 ("Grella provided new Strathmore messages for Fournier to re-record").

- Grella determined which leads should be called. *See* March 2, 2015 E-mail from Grella to Founier (attached as Ex. 4 to Church Decl.) ("I will work on [the file containing leads] locally and upload as needed for clients.").

- Grella instructed Fournier on (1) which numbers in the Strathmore account should be "do NOT call;" (2) which numbers should be added to the campaign to be called; and (3) which "already dialed" numbers should not be called again. *See* Ex. 1 to Church Decl.

- Grella physically dialed the telephone numbers via the Campaign Manager software. *See* February 20, 2015 E-mail from Fournier to Grella (instructing Grella not to dial until Fournier added, at Grella's request, an undialed leads list provided by Grella) (attached as Ex. 5 to Church Decl.).

Thus, the SAC fails to allege that VBC or Fournier placed any "call" sufficient to state a claim under the TCPA. Rather, a review of Telephone Science's allegations—including the emails referenced in the SAC—demonstrates that other defendants made crucial decisions regarding the phone numbers to be called and actually placed the calls at issue. Fournier and VBC, in response to requests by Grella, merely provided customer assistance on the operation of the Campaign Manager software.

### C. Telephone Science Fails to Plausibly State a Claim Against Jeff Fournier Personally

As a general matter, absent bad faith or fraud, corporate officers "acting within the scope of their employment cannot be personally held liable for" acts committed by their corporations. *See Shostack v. Diller*, No. 15-cv-2255, 2015 WL 5535808, at *5 (S.D.N.Y. Sept. 16, 2015). Under the TCPA, courts have frequently dismissed complaints where the plaintiff fails to allege

-9-

that the individual directed, authorized, or participated meaningfully in any of the allegedly wrongdoing. *See, e.g.*, *Cunningham v. Kondaur Capital*, No. 3:14-1574, 2014 WL 8335868, at *8 (M.D. Tenn. Nov. 19, 2014) *report and recommendation approved*, No. 3:14-CV-01574, 2015 WL 1412737 (M.D. Tenn. Mar. 26, 2015) (recommending denial of leave to amend to assert claims for individual liability against corporate officers because "the proposed amended complaint d[id] not contain a single factual allegation that support[ed] such claims"); *Lucas v. Telemarketer Calling From (407) 476-5670 & Other Tel. Numbers*, No. 1:12-CV-630, 2014 WL 1119594, at *18 (S.D. Ohio Mar. 20, 2014) (finding complaint that "alleges broadly that each individual was 'actively involved in management' or 'participated in tortious behavior,'" to be insufficiently pled, but finding allegations that one executive "commingled his personal finances" with the company that was "an alter ego for [the executive] and his family" were "(barely) sufficient to state a theory of derivative personal liability").

Moreover, courts that have allowed TCPA claims against corporate officers to proceed have found specific acts or involvement on the part of the particular corporate officer actor. *See, e.g., Ott v. Mtg. Inv'rs Corp. of Ohio*, 65 F. Supp. 3d 1046, 1061 (D. Or. 2014) (denying motion to dismiss where plaintiff alleged that the individual defendants (1) "were responsible for designing and implementing all activity by [defendant's] telemarketers" and (2) "'personally received numerous emails concerning requests to stop the calls by members of the Internal Do–Not–Call Class,' but ignored them").[5]

---

[5] *See also Jackson Five Star Catering, Inc. v. Beason*, No. 10-10010, 2013 WL 5966340, at *4 (E.D. Mich. Nov. 8, 2013) (granting summary judgment against individual defendant where (1) evidence established that he was "the only person who has the authority to issue a check for the company" and the company issued a "check containing a memo line stating '5,000 fax ads'" signed by him and (2) it was undisputed that he "personally participated in the payment of and authorization for the fax ads."); *Van Sweden Jewelers, Inc. v. 101 VT, Inc.*, No. 1:10-CV-253, 2012 WL 4074620, at *8 (W.D. Mich. June 21, 2012) (denying

-10-

Here, Telephone Science fails to plead any specific facts that Fournier, a VBC corporate officer, personally participated in, directed or authorized the alleged acts that violated the TCPA. Instead, Telephone Science vaguely alleges that Fournier "personally authorized the conduct at issue that violated the TCPA" (*id.* ¶ 32), had "authority and responsibility to prevent or correct the subject unlawful telemarketing practices" (*id.* ¶ 34), and "directly and personally participated in, ratified, directed and/or authorized the conduct constituting the statutory violations alleged herein" (*id.* ¶ 35). But these allegations are mere legal conclusions, which are not granted the presumption of truth on a motion to dismiss. *See Shostack*, 2015 WL 5535808, at *5 (citing *Mayor & City Council of Baltimore v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013)). Therefore, the claims against Fournier should be dismissed.

## III. CONCLUSION

For the foregoing reasons, Telephone Science's SAC must be dismissed.

---

individual defendant's summary judgment motion because there were contested issues of fact as to his "knowledge and participation in the TCPA violations at issue" because Plaintiff contended its evidence shows the individual "authorized and participated in the scheme to broadcast advertisements by facsimile by directing a list to be purchased or assembled, directing and supervising employees or third parties to send the advertisements by fax, creating and approving the form of advertisements to be sent, determining the number and frequency of the facsimile transmissions, and approving or paying the employees or third parties to send the advertisements by facsimile transmission"); *Versteeg v. Bennett, Deloney & Noyes, P.C.*, 775 F. Supp. 2d 1316, 1318, 1321 (D. Wyo. 2011) (granting summary judgment on default where plaintiff alleged individual defendant's voice was on the pre-recorded message, was an officer and shareholder, and was head of collections, head of information technology, and in charge of the employees placing the call, which the court found established that he "was not merely a corporate officer; he was directly involved in the collections efforts"); *Covington & Burling v. Int'l Mktg. & Research, Inc.*, No. CIV.A. 01-0004360, 2003 WL 21384825, at *7 (D.C. Super. Ct. Apr. 17, 2003) (granting plaintiff's motion for summary judgment where individual defendants were "the only officers of Fax.Com and they ha[d] testified to their involvement with all aspects of Fax.Com from marketing to supervising employees").

| | |
|---|---|
| Dated: January 26, 2016 | MORGAN, LEWIS & BOCKIUS LLP |

/s/ Gregory T. Parks
Gregory T. Parks (admitted *pro hac vice*)
Ezra D. Church (admitted *pro hac vice*)
1701 Market Street
Philadelphia, PA 19103-2921
215.963.5000
gparks@morganlewis.com
echurch@morganlewis.com

Stephanie Gamiz
101 Park Avenue
New York, New York 10178
212.309.6000
sgamiz@morganlewis.com

*Attorneys for Defendants Voice Broadcasting Corporation and Jeff Fournier*